**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **JEFFERY B. SANFORD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Civil Action No. 3:06-cv-00327-MHT-DRB** |
| | ) |
| **JAY JONES, et al.** | ) |
| | ) |
| **Defendants.** | ) |

### DEFENDANTS' SPECIAL REPORT

COME NOW Sheriff Jay Jones, Major Cary Torbert, and Lieutenant Corey Welch, Defendants[1] in the above-styled cause, and submit their Special Report to the Court.

### INTRODUCTION

On April 11, 2006, Plaintiff filed his Complaint in the United States District Court for the Middle District of Alabama against these Defendants. On April 17, 2006, this Court ordered Defendants to file a Special Report and Answer within 40 days of the date of the Order. On May 30, 2006, this Court dismissed the Defendant designated as the "Lee County Detention Center" with prejudice prior to service of process pursuant to the provisions of 28 USC 1915(e)(2)(B)(i). On June 29, 2006, this Court granted the Defendants an extension of time until August 2, 2006, to file their Special Report and Answer.

Plaintiff was arrested on March 13, 2006, on a charge of Second Degree Theft. (Exhibit A, Inmate File of Jeffery Bernard Sanford[2], "Inmate File," Inmate Booking Sheet dated March 13, 2006.) He was booked into the Lee County Detention Facility that same day. (Id.) On June 9, 2006, the Plaintiff pled guilty to this charge and was sentenced to one year of confinement,

---

[1] Plaintiff also lists "Stewart Scrawl" as a Defendant; however, "Stewart Scrawl" has not been served and is therefore not a Defendant in this case. (See Doc. 10.)

[2] See Exhibit B, Affidavit of Cary Torbert, Jr., "Torbert Aff.," ¶ 43 for certification of Plaintiff's Inmate File.

nine years of suspended confinement, and 4 years probation.  (Exhibit C, Conviction Report dated June 9, 2006.)

### PLAINTIFF'S ALLEGATIONS

The Plaintiff's Complaint alleges the following violations of his rights with regard to his conditions of confinement at the Lee County Detention Facility:

(1) The Plaintiff first alleges that he is served inadequate meals.  (Plaintiff's Complaint, p. 2.)  Specifically, he alleges that the meals served resulted in his tooth being chipped "because the main course, which was replacement for no meat meal; black-eye peas were not cooked." (Plaintiff's Complaint, pp. 2-3.)  He also alleges that from March 26 to April 3, 2006, there was no breakfast meat.    Finally, he alleges that the serving sizes for their meals are wrong. (Plaintiff's Complaint, p. 3.)

(2) The Plaintiff next alleges that the Lee County Detention Facility has improper ventilation in cells.  He alleges that the improper ventilation is causing him to suffer breathing problems.  He also alleges that there is stuffiness and that the floors are "sweating."  (Plaintiff's Complaint, p. 3.)

(3) The Plaintiff's next allegation is that he is forced to stay in a cell where there is lead paint.  He also alleges that there is paint peeling on the floors, tables, and ceiling.  Specifically, he alleges that he has sent chips of lead paint out to be tested and that it is very visible in most cells.  (Plaintiff's Complaint, p. 3.)

(4) Plaintiff's final allegation is that the Lee County Detention Facility has mildew in spots, rust on tables, and a chipped spot on bars, doors, etc.  (Plaintiff's Complaint, p. 3.)

The Plaintiff requests the following relief:  (1) that the Lee County Detention Facility be closed; (2) that he be awarded $100,000 for pain and suffering and future health problems; and

(3) that Defendants pay for his dental treatment.  (Plaintiff's Complaint, p. 4.)

DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by the Plaintiff as being untrue and completely without basis in law or fact.  Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.  (Exhibit D, Affidavit of Sheriff Jay Jones[3], "Jones Aff.," ¶ 4; Ex. B, Torbert Aff. ¶ 4; Exhibit E, Affidavit of Lieutenant Corey Welch[4], "Welch Aff.," ¶ 4.)  Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act, mootness, and additional defenses presented below.  Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

## I.    FACTS

Sheriff Jay Jones has delegated the responsibility for the day-to-day functions of the Lee County Detention Facility to Major Cary Torbert, Jr., the Chief Deputy of Corrections of the Lee County Detention Facility.  As Sheriff of Lee County, Jay Jones is responsible for promulgating the policies governing the Lee County Detention Facility.  (Ex. D, Jones Aff. ¶ 5.) The Defendants have complied with all policies and procedures of the Lee County Detention Facility. The Defendants are not aware of nor have they authorized or allowed any deviation from said policies and procedures.  (Ex. D, Jones Aff. ¶ 6; Ex. B, Torbert Aff. ¶ 22; Ex. E, Welch Aff. ¶ 22.)

It is the policy of the Lee County Sheriff's Office that members of the Detention Center staff receive and answer any written grievances or requests made by inmates to the Sheriff, Chief

---

[3] Jay Jones is the duly elected Sheriff of Lee County, Alabama, and has served in such capacity since 1999.  (Ex. D, Jones Aff. ¶ 2.)  The unsigned Affidavit of Jay Jones is attached hereto.  Jay Jones has approved the attached Affidavit, and the signed Affidavit will be filed upon Defendants' counsel's receipt of the document.

[4] Corey Welch is employed by the Lee County Sheriff's Office and is assigned to serve as a Corrections Officer at the Lee County Detention Center.  Lieutenant Welch has worked as a correctional officer for over ten years, having obtained the rank of Lieutenant in November 2004.  Lieutenant Welch is both a graduate of the Police Academy and the Alabama Jail Management School.  (Ex. E, Welch Aff. ¶ 2.)

Deputy Sheriff, or Detention Center personnel.  All properly submitted nonmedical request forms are answered, and a copy is placed in the inmate's inmate file.  All medical request forms are forwarded to the medical staff to be answered, and a copy of the answered request form is filed in that inmate's medical file.  (Ex. B, Torbert Aff. ¶ 5; Ex. E, Welch Aff. ¶ 5.)  The Plaintiff was aware of the request procedure as evidenced by the request forms he has filed that were answered and are present in his inmate file.  (Ex. B, Torbert Aff. ¶ 5.)

Requests for medical attention, telephone calls, or other matters must be made in writing on an Inmate Request Form.  An exception exists for requests of an emergency nature which will be handled immediately without a written request.  Inmates housed in the Lee County Detention Center will be furnished with Inmate Request Forms for the purpose of stating their requests or grievances in writing.  Detention Center personnel are charged with the responsibility of receiving and forwarding these forms to the proper authority at any time they are offered a completed form by an inmate.  The officer receiving the request form is to answer the request if possible.  If that officer is unable to answer the request, he is to forward it to the appropriate individual and/or up the chain of command until the request is answered.  If the request form is directed to a particular officer, the officer receiving the request will forward the request to the officer to whom the request is directed.  If the officer to whom the request is directed is not on duty that day, the request will be addressed on that officer's next scheduled working day.  (Ex. B, Torbert Aff. ¶ 6; Ex. E, Welch Aff. ¶ 6.)

The Defendants have never received any request form from the Plaintiff concerning any of the allegations made the basis of his Complaint.  Further, the Plaintiff has never even verbally complained to any of the Defendants of any of the alleged conditions.  In fact, the Plaintiff and the Defendants have never had any conversation regarding the alleged conditions.  (Ex. D, Jones Aff. ¶

7; Ex. B, Torbert Aff. ¶ 7; Ex. E, Welch Aff. ¶ 7.)

Internal grievance procedures at the Lee County Detention Facility are available to all inmates. It is the policy of the Lee County Sheriff's Office that inmates are permitted to submit grievances and that each grievance will be acted upon. (Ex. B, Torbert Aff. ¶ 8; Ex. E, Welch Aff. ¶ 8.) All inmates are provided access to a Lee County Detention Center Inmate Handbook. A copy of this handbook is placed in each cellblock for inmates to review whenever they wish. The inmate handbook states that an inmate may report a grievance on an inmate request form. Grievances are first answered by the appropriate staff at the lowest level in the chain of command. The inmate handbook also states that if the inmate is not satisfied with the first answer to his grievance, the inmate may appeal all the way up the chain of command, up to the Sheriff, who will make the final decision. (Ex. B, Torbert Aff. ¶ 9; Ex. E, Welch Aff. ¶ 9.)

None of the Defendants have ever received a grievance from the Plaintiff concerning any of the allegations made the basis of his Complaint. (Ex. D, Jones Aff. ¶ 8; Ex. B, Torbert Aff. ¶ 10; Ex. E, Welch Aff. ¶ 10.) Per Lee County Sheriff's Office policy, an inmate has the opportunity to appeal any grievance to Major Torbert and Sheriff Jones if he were not satisfied with the response at the lower levels in the chain of command. The Plaintiff has not appealed any grievance to either Major Torbert or Sheriff Jones. Accordingly, the Plaintiff has failed to exhaust his administrative remedies at the Lee County Detention Center. (Ex. D, Jones Aff. ¶ 8; Ex. B, Torbert Aff. ¶ 10.) The Plaintiff was aware of the method for submitting grievances. All properly submitted grievances are answered, and a copy is placed in the inmate's inmate file. (Ex. B, Torbert Aff. ¶ 11; Ex. E, Welch Aff. ¶ 11.) Upon Major Torbert's review of the Plaintiff's inmate file, there are no grievances concerning the allegations made the basis of his Complaint. (Ex. B, Torbert Aff. ¶ 11; Exhibit F, Inmate File.)

It is the policy of the Lee County Sheriff's Office that inmates incarcerated in the Lee County Detention Center are provided with a nutritionally adequate diet. (Ex. B, Torbert Aff. ¶ 12; Ex. E, Welch Aff. ¶ 12; Exhibit G, Affidavit of Ray Roberson[5], "Roberson Aff.," ¶ 5.) Inmates are served three meals each day at regularly scheduled times. At least two of these meals are hot and there is no more than 14 hours between the evening meal and breakfast. (Ex. B, Torbert Aff. ¶ 13; Ex. E, Welch Aff. ¶ 13; Ex. G, Roberson Aff. ¶ 6.) All meals are served at the appropriate temperature as soon as possible after they are prepared. (Ex. B, Torbert Aff. ¶ 14; Ex. E, Welch Aff. ¶ 14; Ex. G, Roberson Aff. ¶ 7.) Consideration is given to texture, color, flavor and appearance in food preparation. (Ex. B, Torbert Aff. ¶ 15; Ex. E, Welch Aff. ¶ 15; Ex. G, Roberson Aff. ¶ 8.) The Lee County Detention Facility menus are reviewed regularly by a registered dietician to ensure that inmates are provided with a nutritionally adequate diet. (Ex. B, Torbert Aff. ¶ 16; Ex. E, Welch Aff. ¶ 16; Ex. G, Roberson Aff. ¶ 9.) Lieutenant Ray Roberson, the Assistant Jail Administrator, is in charge of overseeing the Lee County Detention Facility meal program. (Ex. B, Torbert Aff. ¶ 17; Ex. E, Welch Aff. ¶ 17; Ex. G., Roberson Aff. ¶ 2.) All beans and peas that are served to inmates at the Lee County Detention Facility are fully cooked. (Ex. G, Roberson Aff. ¶ 10.) Each inmate is served nutritionally adequate servings of each item on the menu. Four ounce serving utensils are used to ensure that each inmate receives an adequate serving of each food item. (Ex. G, Roberson Aff. ¶ 11.)

On April 5, 2006, as the inmates were eating, Sergeant Tim Parquett reported to cell F-4 on a possible complaint about the food trays. (Exhibit H, Inmate File, Special Report dated April 5, 2006.) When he arrived at F-4, inmate Jeffrey Sanford complained to Sergeant Parquett that

---

[5] Ray Roberson is employed with the Lee County Sheriff's Department and serves as Assistant Jail Administrator at the Lee County Detention Facility. Roberson has worked in the Lee County Detention Facility for twenty-three years and has obtained the rank of Lieutenant. One of his duties is to oversee the Lee County Detention Facility meal program. (Ex. G, Roberson Aff. ¶ 2.)

the beans were not done. Therefore, Sergeant Parquett conducted an investigation into the matter. Parquett questioned the officers who were serving the inmates if they had any problem with uncooked beans. No other cells or wings in the Detention Facility had any problems. On that day, the Plaintiff did not mention any problem with his tooth. (Ex. H.)

The Plaintiff did not complain to anyone about his tooth until April 14, 2006. (Ex. H.). The Plaintiff has been treated for a chipped tooth as well as impacted wisdom teeth by the jail nursing staff, the jail doctor, and an oral surgeon. (See generally, Exhibit I, Inmate Medical File of Jeffrey B. Sanford[6], "Medical File".) However, the medical records indicate that the Plaintiff actually chipped his tooth on March 25, 2006, before to the incident with the beans even occurred. (Ex. I, p. 5 (Dr. McFarland's notes dated April 11, 2006.) and p. 6 (Dr. McFarland's notes dated April 4, 2006.) Prior to coming to the Lee County Detention Facility, the Plaintiff's teeth were in poor repair and hygiene and susceptible to injury. Because of this poor condition, his tooth would have eventually chipped and required treatment despite the circumstances. (Exhibit K, Affidavit of John McFarland, MD, "McFarland Aff.," ¶ 3.)

It is the policy of the Lee County Sheriff's Office to maintain a healthy environment within the Lee County Detention Center for the benefit of both inmates and the Detention Center staff. (Ex. B, Torbert Aff. ¶ 18; Ex. E, Welch Aff. ¶ 18.) The Lee County Detention Facility is air controlled. There is air returning from the outdoors throughout the facility at all times. In fact, there are two vents in every cell. In the event that condensation forms on the floors of the Detention Facility, the inmates are given access to mops as well as flip-flops to use. (Ex. B, Torbert Aff. ¶ 19; Ex. E, Welch Aff. ¶ 19.) Inmates have access to Clorox and water every day so that they may clean their living areas. Further, the inmates are provided with germicide which is designed especially to combat mildew. (Ex. B, Torbert Aff. ¶ 21; Ex. E, Welch Aff. ¶ 21.) There

---

[6] See Exhibit J, Affidavit of Nurse Linda Stewart, ¶ 6 for certification of Plaintiff's medical records.

is no lead paint in the Lee County Detention Facility. All paint used in the Detention Facility is oil-based. (Ex. B, Torbert Aff. ¶ 20; Ex. E, Welch Aff. ¶ 20.)

II.    **LAW**

      A.    **All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.**

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted. Id.; Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 n.3 (11th Cir.

8

1990).

**B.**    **Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

**1.**    **Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e (a). The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him. First, the Plaintiff has not exhausted the grievance procedures provided at the Lee County Detention Facility. Despite the availability of a grievance procedure at the Lee County Detention Facility, the Plaintiff did not file a grievance regarding any of the allegations made the basis of his Complaint. Therefore, the Plaintiff has failed to exhaust his administrative remedies at the Lee County Detention Facility.

Second, the Plaintiff has not alleged that he pursued any grievance through the State Board of Adjustment. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60. The Sheriff of Lee County is a state officer, as are his alter egos, and therefore, they would be entitled to sovereign immunity. See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998). Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies, stating

that the judicially recognized futility and inadequacy exceptions that existed under former §

1997e(a) are not applicable under the new mandatory exhaustion requirement of the PLRA);

Booth v. Churner, 532 U.S. 731, 741 (2001) (concluding that the exhaustion of administrative

remedies is now mandatory and courts cannot excuse exhaustion).

> ### 2.  Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.

> "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . .  In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis."

Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002).  Because the

Plaintiff has not alleged a physical injury that is greater than de minimis, his Complaint is due to

be dismissed.

> ### C.  Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.

Defendants were acting within their discretionary authority as Sheriff and jail officials of

Lee County during all times relevant to Plaintiff's Complaint because all their actions were taken

in the furtherance of their job duties.  See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d

1252, 1267 (11th Cir. 2004).  Once a defendant has asserted the defense of qualified immunity

and shown that he was acting within his discretionary authority, the threshold inquiry a court

must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation.

Saucier v. Katz, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light

most favorable to the party asserting the injury, do the facts alleged show the officer's conduct

violated a constitutional right?"  Id.  (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  The

second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the Plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

### 1. The Plaintiff's Constitutional Rights were not violated.

In order to establish a conditions of confinement claim Plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to that condition, and (3) causation. Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981) (first element); Wilson v. Seiter, [502] U.S. [294, 303], 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991) (second element); Williams v. Bennett, 689 F.2d 1389-90 (11th Cir. 1982) (third element). Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry. Wilson v. Seiter, 502 U.S. at 290. In the

instant case, the Plaintiff cannot establish either the objective or subjective components of his conditions of confinement claims.

With regard to the objective component, the Eleventh Circuit has held that "*extreme deprivations are required to make out a conditions-of-confinement claim*" under the Eighth Amendment.[7] Chandler v. Crosby, 379 F.3d 1278, 1298 (11th Cir. 2004) (emphasis in original). "[A] constitutional violation occurs only where the deprivation alleged is, objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994). "[T]he Constitution does not mandate comfortable prisons." Chandler, 379 F.3d. at 1289. In the instant case, the Plaintiff cannot present evidence of any *extreme* deprivation that could be objectively considered "cruel and unusual."

### a.    Objective Component

It is clear that the conditions alleged in the Plaintiff's Complaint were not "extreme" as to rise to the level of a constitutional violation.

As to Plaintiff's claims regarding his food, the Eleventh Circuit has clearly stated: "A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required. The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (citations omitted) (internal quotation marks omitted); See, e.g., Jones v. Diamond, 594 F.2d 997, 1014 (5th Cir. 1979) ("The Constitution requires only that prisoners be furnished reasonably adequate food.") Here, the Plaintiff

---

[7] "Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. But it makes no difference whether [the plaintiff] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving pretrial detainees.'" Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005)(internal citations omitted).

complains that a bean was not fully cooked. However, the investigation by Sgt. Parquett revealed that the Plaintiff's allegation – if indeed true – was an isolated instance and cannot rise to the level of a constitutional violation. The Plaintiff's complaint that no meat was served with breakfast is frivolous as well. The Defendants have testified that the inmates at the Lee County Detention Facility are served more that adequate meals. Just as in <u>Hamm</u>, in the instant case, the allegation, "while unpleasant, does not amount to a constitutional deprivation." <u>Hamm</u>, 774 F.2d at 1575.

The Plaintiff's claims regarding improper ventilation, lead paint, and cleanliness similarly do not rise to the level of a constitutional violation. The Defendants have testified that there is air returning from the outdoors throughout the facility at all times. In fact, there are two vents in every cell. In the event that condensation forms on the floors of the Detention Facility, the inmates are given access to mops as well as flip-flops to use. Inmates have access to Clorox and water every day so that they may clean their living areas. Further, the inmates are provided with germicide which is designed especially to combat mildew. There is no lead paint in the Lee County Detention Facility. All paint used in the Detention Facility is oil-based. Clearly, none of the Plaintiff's conditions of confinement are extreme as would form a constitutional violation.

**b.    Subjective Component**

Even if the Plaintiff's conditions of confinement were objectively "cruel and unusual," there must still be evidence of subjective deliberant indifference on the part of each Defendant. "To be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs." <u>LaMarca v. Turner</u>, 995 F.2d 1526, 1535 (11th Cir. 1993). "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred

from the defendant's failure to prevent it.'" Id. (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985), cert. denied, 479 U.S. 816 (1986). There must be evidence that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The Court equates the level of culpable intent required to the standard employed in the context of *criminal* recklessness prosecutions. Id. at 837-839. No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not." Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996). Where jail officials attempt to remedy constitutional short-comings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of but disregarded appropriate effective alternatives. LaMarca, 995 F.2d at 1536.

In the instant case, even if there were an excessive risk to his health or safety, the Plaintiff has not alleged that any of the Defendants knew of or disregarded that risk. There are no request slips in the Plaintiff's file regarding the Plaintiff's allegations of the conditions of his confinement. There is no evidence that the Plaintiff complained to any of the named Defendants. The Plaintiff has failed to sufficiently allege how each Defendant was deliberately indifferent to any alleged conditions.

Because the Plaintiff cannot meet the objective or subjective tests as set forth in Farmer, *supra*, his conditions of confinement claims are due to be dismissed.

Furthermore, the United States Supreme Court has held that a significant injury is required in order to sustain a conditions of confinement claim. Porter v. Nussle, 534 U.S. 516, 528 (U.S. 2002); see also Smith v. Copeland, 87 F.3d 265, 268 (8th Cir. 1996) (noting that the

plaintiff "did not allege that he was exposed to disease or suffered any other consequences of the exposure [to raw sewage]" and finding a de minimus imposition that did not amount to a constitutional violation).  The Plaintiff has not alleged that he suffered an injury that is greater than *de minimus* as a result of the alleged conditions of his confinement.  The only possible injury is his broken tooth, and Dr. McFarland testified that his tooth would have broken no matter what because of its condition prior to coming to the Lee County Detention Facility.  Further, the medical records show that the Plaintiff broke his tooth prior to the alleged "bean" incident.  Accordingly, the Plaintiff cannot sustain a conditions of confinement claim.

## 2.    No clearly established law provided the Defendants with fair warning that their conduct was unlawful.

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful.  He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

Plaintiff cannot meet his burden of demonstrating a constitutional violation or showing

that clearly established law provided the Defendants with fair warning that their conduct was unlawful in any of the areas of which the Plaintiff complains.  Therefore, Defendants are entitled to qualified immunity.

**D.    The Plaintiff has failed to allege sufficient personal involvement on each claim.**

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation.  Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995).  The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury.  Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

The Plaintiff has failed to allege sufficient allegations demonstrating that the Defendants were in any way involved in the actions he claims were constitutionally infirm.  There are insufficient facts to show that these Defendants personally participated in these claims, and the Plaintiff has failed to sufficient allege specifically how these Defendants violated his constitutional rights with regard to his claims.  In fact, the Plaintiff does not even mention any of the Defendants by name except to state that they are Defendants.  Because of the lack of allegations of personal involvement on each claim, the Plaintiff's claims are due to be dismissed.

The lack of factual allegations against the Defendants make it clear that the Plaintiff is attempting to hold the Defendants liable on the theory of *respondeat superior*.  To the extent that Plaintiff's claims are an attempt to hold the Defendants liable under a *respondeat superior* theory, his claim must similarly fail.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  The Eleventh Circuit in Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999), established exactly what is required to state a claim (or prove) supervisory liability:

> Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

193 F.3d at 1269. The causal connection may also be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)). In light of the applicable law, the Plaintiff's allegations are insufficient to create liability on the part of the Defendants. As such, Plaintiff's conditions of confinement claims are due to be dismissed.

### E. The injunctive relief requested by the Plaintiff is moot.

Subject matter jurisdiction is a "threshold issue" which a Plaintiff must establish to the Court's satisfaction before he may prevail on any of his claims. See generally, Rosado v. Wyman, 397 U.S. 397, 402 (1970); Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998). In the instant case, the Plaintiff could not overcome this initial hurdle of subject matter jurisdiction with regard to his claim for injunctive relief because the Plaintiff's claims for injunctive relief are moot. "[A] moot suit 'cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it.'" National Advertising Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005). Because the evidence is clear that the Plaintiff has been provided dental care, his request for dental care is moot.

### F. Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most

favorable to the nonmovant.  <u>Greason v. Kemp</u>, 891 F.2d 829, 831 (11th Cir. 1990).  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  <u>See Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" <u>Reeves</u>, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[8]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (<u>en banc</u>) quoting <u>Massachusetts Sch. of Law v. American Bar</u>, 142 F.3d 26, 40 (1st Cir. 1998).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff Jeffery B. Sanford, in the Complaint.  Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 2nd day of August, 2006.

---

[8] Although <u>Reeves</u> was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" <u>Reeves</u>, 530 U.S. at 150, <u>citing</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-51 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

**s/Amanda Kay Morgan**
AMANDA KAY MORGAN Bar No.  ALL079
Attorney for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  amorgan@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 2nd day of August, 2006, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Jeffery B. Sanford
AIS 143572
Lee County Detention Center
P. O. Box 2407
Opelika, AL 36801

**s/Amanda Kay Morgan**
OF COUNSEL